IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

_____

| | | |
|---|---|---|
| JARVIS EDMOND CARTER, | ) | Cause No. CV 05-90-BLG-RFC-CSO |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | FINDINGS AND RECOMMENDATION |
| | ) | OF U.S. MAGISTRATE JUDGE |
| RANDY GOWEN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

_____

| | | |
|---|---|---|
| JARVIS EDMOND CARTER, | ) | Cause No. CV 05-134-BLG-RFC-CSO |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | FINDINGS AND RECOMMENDATION |
| | ) | OF U.S. MAGISTRATE JUDGE |
| MONTANA DEPARTMENT OF | ) | |
| CORRECTIONS and ATTORNEY | ) | |
| GENERAL OF THE STATE OF | ) | |
| MONTANA, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

_____

These two cases were filed by Plaintiff/Petitioner Jarvis Carter, a state prisoner proceeding

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 1

pro se and in forma pauperis. Cause No. CV 05-90-BLG-RFC-CSO ("No. 05-90") is a civil action alleging violation of Carter's constitutional right to due process in a hearing at a pre-release center. No. CV 05-134-BLG-RFC-CSO ("No. 05-134") is an action for writ of habeas corpus, alleging the same violation. Although these cases remain two separate actions, they are closely related and will be addressed together.[1]

**I. Background**

In July 2004, Carter was living at the Billings Pre-Release Center ("BPRC"). He was accused of acting as a lookout for another inmate, Ricky Doolittle, who broke into the kitchen office by crawling through the returned-tray window at 1:30 in the morning. *See* Answer (doc. 13) Ex. O at 1, No. 05-134.

Carter's Complaint in No. 05-90 alleges that, on or about July 20, 2004, in a disciplinary hearing held at the Billings Pre-Release Center ("BPRC"), he was deprived of the right to call witnesses, the "right to see and hear everything the factfinder had seen and heard," the right to the

---

[1] As Judge Anderson previously explained, Carter submitted pleadings and documents en masse, and it was difficult to sort the materials out into comprehensible form:
> After submitting his documents in this case – including a sixty-one page affidavit – Carter resubmitted substantially the same documents again, as well as a petition for writ of habeas corpus raising the same allegations. His multiple voluminous submissions, some of which seek to blend his § 1983 action with a habeas petition on a different matter and which combine exhibits pertinent to one case with exhibits pertinent to another, have caused considerable confusion for the Court's staff. The Court has done its best to sort Carter's pleadings into workable, comprehensible forms. Another case file has been opened for the habeas petition in which Carter makes the same allegations as he makes in this § 1983 action. *See Carter v. Montana Dep't of Corrections*, No. CV 05-134-BLG-RWA (D. Mont. filed Oct. 14, 2005). Carter submitted that petition on September 2, 2005, but it was not discovered within his voluminous submissions until mid-October. Another case file has been opened for Carter's habeas petition concerning the consecutive or concurrent nature of his state sentences. *See Carter v. State of Montana*, No. CV 05-119-BLG-RWA (D. Mont. filed Sept. 9, 2005). A fourth case file has been opened for another § 1983 action that Carter filed in the Great Falls Division. *See Carter v. Montana Dep't of Corrections*, No. CV 05-100-GF-CSO (D. Mont. filed Oct. 11, 2005).

Findings and Recommendation (doc. 12) at 2. Carter later filed other actions, but, of all his filings in this Court, only Nos. 05-90 and 05-134 remain pending.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 2

hearings officer's statement of his decision, and the right to an impartial hearings officer. He also contends that there was not enough evidence to support the alleged violation of the BPRC rules and that the hearing did not substantially comply with governing policy. *See* Compl. (doc. 1) at 4, ¶ IV.A(1), 05-90. The sole remaining Defendant[2] named in 05-90, Randy Gowen, was the hearings officer. As a result of the disciplinary hearing, Carter's placement at the BPRC was revoked, and he was returned to prison. *Id*. at 5, ¶ V.

Carter filed his civil complaint in this Court on July 14, 2005.

In 2005, Carter also filed a petition for writ of habeas corpus in the Montana Supreme Court. The Montana Supreme Court stated that Carter relied on *Morrissey v. Brewer*, 408 U.S. 471 (1972), and *Young v. Harper*, 520 U.S. 143 (2000), to argue that he was deprived of due process in the BPRC hearing and that his resultant return to jail was unconstitutional. On August 17, 2005, the Montana Supreme Court denied the petition on the grounds that the penalty imposed against Carter amounted to a transfer from one prison, the BPRC, to another, more restrictive prison, the Yellowstone County Detention Center, so that no due process was required. *See* Answer (doc. 13) Ex. V at para. 6, No. 05-134 (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976)). The court also held that Carter received "written notice of the hearing, an opportunity to present evidence, make a statement, and present a defense," as well as a "written decision," and that "DOC procedure" did not require more. *Id*. para. 7. Carter petitioned for rehearing, asserting that he was not "a custodial inmate subject to 24 hour supervision," as the Montana Supreme Court stated, but that he was

---

[2] Three other defendants were dismissed on February 21, 2006. *See* Order Adopting Findings and Recommendation (doc. 34) at 1-2, No. 05-90. Although Carter's Second Amended Complaint described the actions of other individuals, he did not name those individuals as Defendants. Instead, he intended to use their actions to impute liability to Alternatives, Inc., the organization responsible for operating the BPRC. *Compare* Second Am. Compl. (doc. 23) at 2-3, ¶ III.B(1)-(4), *with id*. at 3-6, ¶ IV.A(2)(A)(1)-(5).

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 3

"allowed to go out into the community and be at the homes and residences of his friends and family." *See* Pet'r Resp. to Answer (doc. 16) at 10, No. 05-134. Rehearing was denied.

Carter filed his habeas petition in this Court on October 14, 2005.

After both actions were filed in this Court and after Defendant Gowen had appeared in No. 05-90, Carter moved to dismiss his Complaint in No. 05-90 in favor of proceeding with his habeas petition. However, because Carter invoked the Court's "sound discretion," United States Magistrate Judge Richard W. Anderson denied the motion.[3] Judge Anderson explained that Carter's habeas petition might be or become moot, and that possibility counseled against dismissal of the civil rights action. No. 05-90 was stayed pending resolution of the habeas case, No. 05-134. *See* Order (doc. 36) at 2-5.

## II. Analysis

Carter's most recent submission indicates that he "is still in the custody of the Montana Department of Corrections but incarcerated in [Nebraska] and will be returning to MDOC per a detainer." Pl.'s Mot. for Leave (doc. 47) at 3. On the other hand, he is listed on the Department of Corrections website as an absconder from probation. *See* CON Network, http://app.mt.us/conweb (last accessed July 16, 2007). If he absconded from probation, it appears that he was released from the Yellowstone County Detention Facility and, therefore, from the sanction imposed by Gowen following the disciplinary hearing in question. The Court is unable to resolve the question of whether the habeas petition is moot in light of the information before it.

---

[3] Based on the parties' written consent, both No. 05-90 and No. 05-134 were assigned to Judge Anderson for all proceedings, including entry of judgment. *See* Order (No. 05-90 doc. 35; No. 05-134 doc. 22) at 1; Consents (No. 05-90 doc. 33; No. 05-134 doc. 21) at 1-2. Judge Anderson retired effective January 8, 2007. Both cases were then referred to the undersigned. *See* Standing Order No. DWM-48 (No. 05-90 doc. 43; No. 05-134 doc. 42).

Regardless, it is possible to move ahead and decide both of these actions. After reviewing the record of both No. CV 05-134 and No. CV 05-90, and Carter's voluminous submissions therein, it is clear that he received all the process that he claims was due to him. Both cases must be decided based on the record of the disciplinary hearing. Even the § 1983 action could not put the Court or a jury in the position of the factfinder at the disciplinary hearing. The only question is whether Carter received the due process protections required by *Wolff v. McDonnell*, 418 U.S. 539 (1974). Thus, it is more efficient to proceed to the merits of the cases.

**A. Assumptions in Carter's Favor**

In a habeas action, a federal court gives significant deference to the decision of the State's highest court. *See* 28 U.S.C. § 2254(d). Here, however, it appears that the Montana Supreme Court did not properly apply controlling United States Supreme Court authority in holding that Carter was merely transferred, so that no process was due. A transfer within the meaning of *Meachum* is not effected as discipline.[4] Carter was plainly disciplined and returned to the Yellowstone County Detention Center as a sanction for his participation in, so to speak, "Doolittle's raid." Moreover, if *Meachum v. Fano*, 427 U.S. 215 (1976), controlled, the Supreme Court would never have decided *Sandin v. Conner*, 515 U.S. 472 (1995), *Edwards v. Balisok*, 520 U.S. 641 (1997), *Wilkinson v. Austin*, 545 U.S. 209 (2005), or any of the other numerous cases involving prison disciplinary hearings or placements within prisons that have been issued since *Meachum*. *Meachum* does not

---

[4]It appear Under Montana law, a sentencing court may commit an inmate to the custody of the Department of Corrections, rather than imposing a prison sentence. *See* Mont. Code Ann. § 46-18-201(3)(d)(i) (2003). When such a commitment is made, the DOC has broad discretion to determine whether the convict should be placed at a prison, a pre-release center, or under supervision in the community. Carter was committed to DOC custody. *See* Answer Ex. V at para. 2. However, the breadth of the DOC's discretion as to initial placement does not alter its due process obligations under clearly established Federal law as determined by the Supreme Court of the United States.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 5

apply.

Additionally, although the Montana Supreme Court described Carter's petition as relying on *Morrissey v. Brewer*, 408 U.S. 471 (1972), and *Young v. Harper*, 520 U.S. 143 (2000), his petition and affidavit, which are attached to the State's Answer in No. 05-134, do not mention those cases.[5] Instead, Carter relied – and here relies – on *Wolff v. McDonnell*, 418 U.S. 539 (1974), which sets the parameters of due process that must be followed in a prison disciplinary hearing when the prisoner has a liberty interest at stake. *See* Answer (doc. 13) Ex. T at 1, No. 05-134; *id*. Ex. U, *passim* (not citing *Morrissey* or *Young*).

Accordingly, the Court will apply in the habeas action, No. 05-134, the same standards of review that apply in the civil action, No. 05-90.

**B. Process That Is Due**

For the sake of argument, the Court will assume that Carter's transfer from BPRC to the Yellowstone County Detention Center effected a hardship that was "atypical and significant" in comparison to the ordinary incidents of life at a pre-release center. *See Sandin*, 515 U.S. at 483-84. Given that assumption, Carter had a liberty interest in remaining at BPRC, and he was entitled to due process before he could be returned to jail. Because Carter's placement at the BPRC did not afford him the same degree of liberty as is awarded to parolees and probationers who are not required to live at a pre-release center, and because Carter relies on *Wolff*, *Wolff* will supply the due process standards.

Under *Wolff*, Carter was entitled to "advance written notice of the claimed violation and a

---

[5] Carter cited several cases that rely on *Morrissey* and *Younger*, but his petition itself adduced *Wolff*.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 6

written statement of the factfinder[] as to the evidence relied upon and the reasons for the disciplinary action taken," *Wolff*, 418 U.S. at 563; an opportunity "to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals," or except where the proposed witness or testimony would be irrelevant or unnecessary, *id*. at 566; and the assistance of a fellow inmate or a staff member if he was illiterate or if the issues were especially complex, *id*. at 570.  He was also entitled to a finding of guilt that was supported by "some evidence," an undemanding standard which is met if "there is *any* evidence in the record that *could* support the conclusion reached" by the fact-finder.  *Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985) (emphases added).  Finally, Carter was entitled to an impartial fact-finder.  *See, e.g.*, *Edwards v. Balisok*, 520 U.S. 641, 647 (1997) ("[t]he due process requirements for a prison disciplinary hearing are in many respects less demanding than those for criminal prosecution, but they are not so lax as to let stand the decision of a biased hearing officer who dishonestly suppresses evidence of innocence."); *see also Wolff*, 418 U.S. at 570-71.

   *Wolff* specifically rejects the suggestion that an inmate in a prison disciplinary hearing must be permitted to confront and cross-examine the witnesses against him.  *See* 418 U.S. at 567-68.  *Wolff* also holds that it is "useful" but not required that the factfinder state its reasons for refusing to allow the inmate to call a particular witness or present particular evidence.  *Id*. at 566.  Finally, *Wolff* does not recognize any "right to see and hear everything the factfinder had seen and heard," though it requires that the factfinder's written statement of reasons for the decision must indicate whether any evidence on which the factfinder relied is omitted from the statement.  *Id*. at 565.

   While DOC policy may require different or additional procedures, that is not pertinent to this

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 7

analysis. Carter cannot obtain relief from a federal court under either 28 U.S.C. § 2254 or 42 U.S.C. § 1983 for violations of state policy or law. *See* 28 U.S.C. § 2254(a) (authorizing relief for persons in custody "in violation of the Constitution or laws or treaties of the United States"); *Walker v. Sumner*, 14 F.3d 1415, 1419-20 (9th Cir. 1994), *overruled on other grounds by Sandin v. Conner*, 515 U.S. 472, 483-84 (1995).

### C. Carter's Hearing

Carter's hearing complied with all of the requirements of *Wolff*. He was refused permission to call two staff witnesses, who would have testified that he "was just talking and wasn't a lookout." *See* Answer Ex. N at 2 (witness request). However, the BPRC investigator, Melanie Emmett, pointed out at the hearing that the witnesses could not say *why* Carter was talking to them. In fact, his talking to them was entirely consistent with his acting as a lookout, because he could distract them from what Doolittle was doing by engaging them in conversation. Therefore, their testimony would not have made it either more or less likely that Carter was acting as a lookout for Doolittle. Gowen properly refused to call them.[6]

Carter also states that he did not receive a written statement of the reasons for Gowen's decision to revoke his placement and send him back to jail. However, one was provided. *See* Answer Ex. Q at 1. Gowen was required personally to make the statement, but he was not required

---

[6] In a document that was not served on defense counsel, Carter contends that *Gowen* never made a decision as to whether his witnesses' proposed testimony would be relevant, emphasizing that Gowen admitted in discovery in No. 05-90 that *the BPRC investigator* said they were irrelevant. *See* Notice (doc. 23) at 3, ¶ 3, No. 05-134. This is a distinction without difference. Had Gowen found the proposed testimony relevant, he would have called the witnesses. He was the factfinder. The only question is whether he was correct, not whether Gowen personally should have uttered the words "The testimony of Carter's proposed witnesses would be irrelevant."

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 8

personally to serve it on Carter.[7]  Carter's right to due process could not be violated merely if, through some accident, he did not receive the statement.  *See Daniels v. Williams*, 474 U.S. 327, 328 (1986) ("the Due Process Clause is simply not implicated by a negligent act of an official").  The point of the requirement for a written statement of reasons is to permit meaningful administrative or judicial review of the decision.  *See Wolff*, 418 U.S. at 565.  It is true that Gowen's statement largely misses that point.  *See* Answer Ex. Q at 1, "Reason for Decision."  Gowen should have completed the "Reason For Decision" portion of the "Summary of Disciplinary Hearing" form that provides a space for the officer to give reasons for his decision.  *Id.*  However, in this case, the Court finds that the purpose of the written statement was adequately fulfilled by the recording and transcript of the hearing.  Carter pursued an appeal, and Mike Ferriter, who at that time was the Administrator of the Community Corrections Division of the DOC, listened to the recording – twice.  *See* Answer Ex. R at 1.  This Court has also reviewed the transcript.  The spirit of *Wolff*, if not the precise letter, was honored.

    Carter also contends that there was no evidence to support the decision and that Gowen was not an impartial factfinder.  But there was evidence to support the decision.  Carter and Doolittle were close friends.  They talked immediately before the incident, and they talked again immediately after the incident.  Though there is no direct evidence as to precisely what time the break-in occurred, Carter talked to two staff members at least near the time of the incident.  Carter did not report the

---

[7] In the same unserved document referred to in note 3, Carter adduces Gowen's admission that he "did not personally send a copy . . . to the Plaintiff."  Gowen was not constitutionally required to personally give a copy of the decision to Carter.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 9

incident, though he knew about it.[8]  From those facts alone, a reasonable factfinder could infer – not beyond a reasonable doubt, but that is not the standard – that Carter helped Doolittle by distracting the two staff members during the break-in.  There is no importance in the fact that no one directly and personally observed or heard Carter and Doolittle conniving.  *See, e.g.*, Aff. of Todd Haubrech (doc. 28-2) at 2-3, ¶¶ 14-18.  The issue came down to credibility and, as Mike Ferriter explained to Carter,  Carter's long list of previous infractions caught up with him and caused the pre-release facility to have no level of trust in Carter.  See Answer Ex. R at 1.  The Doolittle incident was the last straw.

Further, Gowen was impartial.  He was not involved in the investigation of the incident, and Carter has not pointed to any reason to believe that Gowen had personal animus against him.  "Parties cannot attack a judge's impartiality on the basis of information and beliefs acquired while acting in his or her judicial capacity."  *United States v. Frias-Ramirez*, 670 F.2d 849, 853 n.6 (9th Cir. 1982); *see also Corey v. Loui* (*In re Corey*), 892 F.2d 829, 839 (9th Cir. 1989).  Thus, the fact that Gowen may have previously served as a hearings officer and known of Carter's behavioral history at the BPRC is no basis for a finding of partiality or bias.

Finally, the Court has considered Carter's recent motion for "discovery" to add to the record an exculpatory statement from his co-defendant (presumably Doolittle) and the complete tape recording of the disciplinary hearing, as opposed to the transcript.  However, the "some evidence" standard is met by what is already in the record.  It cannot be "unmet" by the additional materials that Carter describes.  Even if, after reviewing the additional materials, the Court felt personally certain

---

[8] Carter insists that he was not required to report the incident.  Even so, the fact that he knew about it but said nothing is consistent with a finding that he was involved in the incident and wanted to conceal it.

that Carter had nothing to do with the incident, the decision was up to Gowen. All the law requires is that "*any* evidence in the record that *could* support the conclusion reached." *Hill*, 472 U.S. at 456. Because there is sufficient evidence in the record to support the conclusion reached by Gowen, it is irrelevant that there was also evidence – even if it is weighty evidence – on the other side.

**III. Conclusion**

These cases might raise the difficult issues posed by the agreement among five Justices in *Spencer v. Kemna*, 523 U.S. 1, 21 (1998) (Souter, J., concurring in the judgment); *id*. at 25 n.8 (Stevens, J., dissenting) (five Justices agreeing that an inmate who is released from custody prior to determination of habeas action may proceed under 42 U.S.C. § 1983). Specifically, if Carter's habeas petition is rendered moot by his release from prison, do the standards of 28 U.S.C. § 2254, which applied in the original action, apply in the action as continued under 42 U.S.C. § 1983? However, there is no need to explore that question. Whether § 2254 or § 1983 applies, both cases are resolved on the question of whether the challenged disciplinary hearing met the due process standards set forth in *Wolff*.[9] That is essentially a question of law. It is clear that Carter received all the process that was due to him. The Court has reviewed all of the materials submitted by Carter and concludes that the essential facts are clear and that there is no room for truly "new" evidence or discovery about the facts surrounding the disciplinary hearing. The central issue involves only the review of a record.

---

[9] Even if the Court's recommendation that *Wolff* should apply is erroneous, the only realistic alternative is *Meachum*, or perhaps a finding that Carter was not deprived of a liberty interest under *Sandin*, not *Morrissey* or *Younger*. Carter was not in the same position as a parolee or probationer who lives in his own home. He was required to live at the pre-release center. At most, he had a liberty interest in staying there. The disciplinary hearing in question certainly did not deprive him of the liberty of a true parolee or probationer.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 11

There may be other ways of analyzing these two cases, but this Court believes that reasonable jurists will not disagree about the ultimate resolution. The habeas petition in No. 05-134 should be denied on the merits. A certificate of appealability should be denied because Carter has not made a substantial showing of the denial of a constitutional right and because the questions posed in this action are not adequate to encourage him to proceed further. *See Lambright v. Stewart*, 220 F.3d 1022, 1024 (9th Cir. 2000); *Lozada v. Deeds*, 498 U.S. 430, 432 (1991) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). The Complaint in the civil rights action, No. 05-90, should be dismissed for failure to state a claim on which relief may be granted. Because Carter already has three strikes,[10] a fourth will not be assessed.

Based on the foregoing, the Court enters the following:

**ORDER**

1. The stay in No. 05-90 is LIFTED;

2. As to No. 05-134, Carter's motion for leave to file additional evidence, to amend the petition, and to conduct discovery (doc. 47) is DENIED.

The Court also enters the following:

**RECOMMENDATION**

1. As to No. 05-134, Carter's motion for judgment (doc. 43) should be GRANTED and the Petition (doc. 1) should be DENIED on the merits, a certificate of appealability should be DENIED,

---

[10] *See Carter v. Boyd, et al.*, No. CV 05-160-BLG-RFC-RWA (D. Mont. May 5, 2006); *Carter v. Thomas, et al.*, No. CV 06-06-H-DWM-CSO (D. Mont. Oct. 19, 2006); *Carter v. Yellowstone County, et al.*, No. CV 07-09-BLG-RFC-CSO (D. Mont. May 25, 2007).

and the appeal should be processed immediately if Carter files a notice of appeal;

    2.  As to No. 05-90, Carter's Complaint (doc. 1) should be DISMISSED for failure to state a claim on which relief may be granted, and pursuant to Fed. R. App. P. 24(a)(4)(B), the District Court should CERTIFY that any appeal from its disposition would not be taken in good faith.

**NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATION
AND CONSEQUENCES OF FAILURE TO OBJECT**

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Findings and Recommendations within ten (10) business days of the date entered as indicated on the Notice of Electronic Filing.  A district judge will make a de novo determination of those portions of the Findings and Recommendations to which objection is made.  The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations.  Failure to timely file written objections may bar a de novo determination by the district judge.

<u>Carter must immediately inform the Court of any change in his mailing address.</u>  Failure to do so may result in dismissal of this case without notice to him.

DATED this <u>27th</u> day of July, 2007.

                                        /s/ Carolyn S. Ostby
                                        Carolyn S. Ostby
                                        United States Magistrate Judge